WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth W. Reed, | No. CV-11-01339-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Karen Barcklay, et al., | |
| Defendants. | |

Pending before the Court is Defendant's Motion for Summary Judgment on Plaintiff's Injunction Claim, (Doc. 346); Defendant's Motion to Supplement Defendant's Statement of Facts in Support of her Motion for Summary Judgment on Plaintiff's Injunctive Claim, (Doc. 359); and Plaintiff's Motion to Preclude/Strike Declaration of Dr. Arnold; Alternatively for Leave to Depose Dr. Arnold and Provide a Rebuttal Expert, (Doc. 354).

The Court will grant the Motion for Summary Judgment and deny without prejudice Defendant's Motion to Supplement and Plaintiff's Motion to Preclude.

I.      **BACKGROUND**

Plaintiff Reed, an Arizona Department of Corrections ("ADC") inmate, claims that Defendant Barcklay, a doctor at the Arizona State Prison Complex ("ASPC")-Yuma, was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment because Defendant refused to prescribe Cafergot to treat Plaintiff's migraine headaches. (Doc. 22 at 12–14). Defendant began working for the ADC in 2001. (Doc. 347 at 1). On July 1, 2012, when Arizona privatized the medical care of its inmates,

Defendant became an employee of Wexford Health Sources, the contracted medical care provider for the ADC. (*Id.*) On March 3, 2013, Defendant began working for Corizon when it replaced Wexford Health Sources as the contracted medical care provider for the ADC. (*Id.* at 2).

Plaintiff was committed to ADC custody in 1994. (Doc. 345 at 1–2). He was first prescribed Cafergot along with Excedrin for his migraine headaches in 2008. (Doc. 22 at 4). In October 2009, Plaintiff was transferred to ASPC-Yuma. (*Id.* at 1–2). After Plaintiff's transfer to ASPC-Yuma, he began seeing Defendant for his migraine headaches and hypertension. (Doc. 167 at 2; Doc. 275 at 2–4). Defendant refilled Plaintiff's Cafergot and Excedrin prescriptions in December 2009 and wrote a prescription for a six-month supply of both medications in January 2010. (Doc. 167 at 2; Doc. 275 at 2–4). But, in July 2010, Defendant refused to renew Plaintiff's Cafergot prescription. (Doc. 346 at 3). Instead, Defendant only renewed the Excedrin prescription. (*Id.*) Plaintiff claims that the combination of Cafergot and Excedrin effectively treated his migraine headaches, but Excedrin alone has not been effective. (Doc. 275, Ex. 1, Reed Aff. ¶ 25). On August 23, 2010, Plaintiff filed a formal inmate grievance regarding Defendant's failure to prescribe Cafergot. (Doc. 22 at 5; Doc. 275, Attach. D1). Plaintiff appealed the response to his formal grievance on October 5, 2010 and his appeal was denied on December 14, 2010. (Doc. 22 at 6; Doc. 275 Attach. D2).

On May 23, 2011, Plaintiff filed a complaint in state court against Defendant seeking injunctive relief. (Doc. 1). Defendant removed the case to this Court on July 6, 2011, and Plaintiff filed an amended complaint on October 3, 2011. (Doc. 1; Doc. 22). On April 4, 2014, Plaintiff was transferred from ASPC-Yuma to ASPC-Tucson. (Doc. 339 at 2). Defendant has not treated Plaintiff since Plaintiff was transferred to ASPC-Tucson. Plaintiff has not been able to obtain a Cafergot prescription since he was transferred to ASPC-Tucson. (Doc. 347 ¶¶ 17–19).

Defendant argues that Plaintiff's claim for injunctive relief is moot because Plaintiff is no longer an inmate at ASPC-Yuma and, therefore, she no longer has any

1    control over Plaintiff's medical treatment. (Doc. 346 at 6–9). Plaintiff asserts that his

2    claim is not moot for two reasons. First, Plaintiff contends that the ADC only transferred

3    him to ASPC-Tucson to moot his claim against Defendant. (Doc. 355 at 3). Second,

4    Plaintiff argues that his claim is not moot because there is a reasonable expectation that

5    he will be transferred back to ASPC-Yuma. (*Id.* at 4).

6    **II.    STATEMENT OF LAW**

7           Under Article III of the Constitution, the jurisdiction of a federal court depends on

8    the existence of a "case or controversy"; without a case or controversy a claim is moot.

9    *Pub. Util. Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996). A

10   claim is considered moot if it is no longer a present and live controversy or if no effective

11   relief can be granted. *Mitchell v. Dupnik*, 75 F.3d 517, 527–28 (9th Cir. 1996). When a

12   question before the court has been mooted by changes in circumstances after the

13   complaint is filed, there is no justiciable controversy. *Flast v. Cohen*, 392 U.S. 83, 95

14   (1968). Questions of mootness regarding injunctions are viewed "in light of the present

15   circumstances." *Mitchell*, 75 F.3d at 528.

16          Generally, an inmate's transfer from one prison to another while his claims are

17   pending will moot his claims for injunctive relief that relate to the first prison. *Preiser v.

18   Newkirk*, 422 U.S. 395, 402–03, 95 (1975); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir.

19   1995); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991). However, if there is a

20   reasonable expectation that the inmate will be transferred back to the prison where the

21   alleged injury occurred, then the transfer does not moot the inmate's claim. *Pride v.

22   Correa*, 719 F.3d 1130, 1138 (9th Cir. 2013); *Johnson*, 948 F.2d at 519. A claim that the

23   inmate might be transferred back to the prison where the injury occurred, without

24   evidence to support such a transfer, is too speculative to overcome mootness. *Dilley*, 64

25   F.3d at 1369.

26   **III.   ANALYSIS**

27          **A.     Motive for Transfer**

28          Plaintiff asserts that his transfer from ASPC-Yuma to ASPC-Tucson, was "an

obvious attempt to moot the injunctive portion of Plaintiff's action." (Doc. 355 at 3). Specifically, Plaintiff notes that his security status did not change and he did not have any altercations with staff members at ASPC-Yuma. (*Id.*) Accordingly, Plaintiff concludes that the only logical reason for his transfer to ASPC-Tucson was to moot his claim for injunctive relief. (*Id.* at 3–4). Defendant contends that Plaintiff's argument regarding the motive for his transfer is purely speculative. (Doc. 356 at 6–7).

Prison officials have broad discretion to move a prisoner from one facility to another for administrative or safety concerns, or for no reason at all. *See Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991) ("When prison officials have legitimate administrative authority, such as the discretion to move inmates from prison to prison, . . . [there are] few restrictions on the use of that authority, regardless of any additional motives which are claimed to exist."). While it is inappropriate for a prison official to transfer an inmate solely to moot the inmate's claims against the prison or a prison employee, if there is any legitimate reason for the transfer, then the motive behind the transfer is irrelevant. *See Dilley*, 64 F.3d at 1372; *see also Burke v. Steadman*, 2014 WL 1456246, at *10 (S.D. Cal. 2014).

Here, Defendant has not provided an explanation for Plaintiff's transfer to ASPC-Tucson. However, Defendant notes that as a physician working for Corizon, not the ADC, she had no influence over Plaintiff's transfer. (Doc. 356 at 8). Defendant states that she "has no authority over inmate placement and would have no reason to know why the ADC transferred [Plaintiff] when they did." (*Id.*) Also, while Plaintiff claims that his security status did not change and thus could not serve as a basis for his transfer, Defendant notes that Plaintiff's institutional risk score was increased in August 2013. (Doc. 356 at 7). Moreover, the length of time between October 2011 when Plaintiff filed his amended complaint in this Court and April 2014 when Plaintiff was transferred to ASPC-Tucson, indicates that the ADC had some other reason to transfer him, besides mooting his claim. (Doc. 22; Doc. 356 at 1). Given the foregoing reasons and the broad discretion that prison officials have in transferring inmates, there is no evidence on which

to conclude that Plaintiff was transferred solely to moot his claim against Defendant.

**B.      Reasonable Expectation of Transfer**

Defendant argues that Plaintiff's claim is moot because Plaintiff does not have a reasonable expectation of being transferred back to ASPC-Yuma. (Doc. 346 at 6–7). Plaintiff, however, contends that it is reasonably likely he will be transferred back to ASPC-Yuma. (Doc. 355 at 4). To support his argument, Plaintiff provides an example of another inmate who was transferred from ASPC-Yuma to ASPC-Tucson and then back to ASPC-Yuma. (Doc. 355 at 4).

When an inmate is transferred to another prison and there is not a reasonable expectation that the inmate will again be subjected to the defendant's allegedly illegal behavior, the inmate's claim for injunctive relief is moot. *Johnson*, 948 F.2d at 519. Moreover, a claim that the inmate might be transferred back to the prison where his injury occurred, without evidence to support the likelihood of such a transfer, is too speculative to prevent mootness. *Dilley*, 64 F.3d at 1369.

The only evidence Plaintiff offers to support his contention that it is reasonably likely he will be transferred back to ASPC-Yuma is an example of another inmate's transfer from ASPC-Yuma to ASPC-Tucson for medical reasons and then later transfer back to ASPC-Yuma. (Doc. 355 at 4). But, another inmate's transfers between prisons and the reason for those transfers have no bearing on whether there is a reasonable expectation that Plaintiff will be transferred back to ASPC-Yuma. Furthermore, one instance of an inmate being transferred from ASPC-Yuma to ASPC-Tucson then returning to ASPC-Yuma does not establish that the ADC regularly makes such transfers. Accordingly, Plaintiff has not demonstrated that there is a reasonable expectation he will be transferred back to ASPC-Yuma. Consequently, Plaintiff's assertion that he will be transferred to ASPC-Yuma is too speculative to overcome mootness. *See Cafasso, U.S. ex rel. v. Gen Dynamics CF Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.").

1    Plaintiff may amend his complaint for injunctive relief to name the correct

2    officials at ASPC-Tucson who he contends are currently responsible for denying his

3    medical treatment. *See Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000)

4    (instructing that the prisoner "be given an opportunity to amend his complaint" because

5    the prisoner "could cure the deficiencies in his complaint by naming the correct

6    defendants.").

7    **IV.    CONCLUSION**

8        Plaintiff's claim for injunctive relief against Defendant Barcklay is moot because

9    Plaintiff is no longer assigned to ASPC-Yuma and he is no longer under Defendant's

10   care. Accordingly, the Court does not decide whether Plaintiff's claim should be

11   dismissed for failure to supplement. (Doc. 345; Doc. 353). Additionally, the Court does

12   not reach Defendant's Motion to Supplement Defendant's Statement of Facts in Support

13   of Her Motion for Summary Judgment on Plaintiff's Injunction Claim, (Doc. 359), or

14   Plaintiff's Motion to Preclude/Strike Declaration of Dr. Arnold; Alternatively for Leave

15   to Depose Dr. Arnold and Provide a Rebuttal Expert, (Doc. 354).

16       **IT IS ORDERED** that Defendant's Motion for Summary Judgment on Plaintiff's

17   Injunction Claim, (Doc. 346), is granted with respect to Plaintiff's request for injunctive

18   relief in Count I of the Complaint, (Doc. 22).  (This Order does not close this case.)

19       **IT IS FURTHER ORDERED** that Defendant's Motion to Supplement

20   Defendant's Statement of Facts in Support of Her Motion for Summary Judgment on

21   Plaintiff's Injunction Claim, (Doc. 359), is denied.

22       **IT IS FURTHER ORDERED** that Plaintiff's Motion to Preclude/Strike

23   Declaration of Dr. Arnold; Alternatively for Leave to Depose Dr. Arnold and Provide a

24   Rebuttal Expert, (Doc. 354), is denied.

25       Dated this 17th day of December, 2014.

26

27

28    _____
      James A. Teilborg
      Senior United States District Judge